Our first case is HR Robotics et al. v. ITC and OPEX as intervener, 2024-1193. Mr. Navek. Thank you, your honor. My name is Ed Navek and I'm representing the appellants, HC Robotics and Envata LLC. The ITC below adopted the infringement determination of the chief ALJ who made three errors of claim interpretation. The first error was in the 194 patent concerning the claim limitation track is positioned so that a delivery vehicle can move between the first series of columns and second series of columns. And then the second and third issues of claim interpretation concern the track limitation of the 194 patent and the drive system limitation of the 505 patent. And the ALJ erred in construing both of those limitations to encompass the use of an elevator or lift to carry a stationary vehicle. So I'd like to start with the track positioning requirement of claim one and the 194 patent. The ordinary meaning of between is in the space separating. So one would think the ordinary meaning of the claim delivery vehicles can move between the two series of columns is in the space separating. And the ALJ erred in interpreting that term so that the vehicles only needed to travel within two imaginary vertical planes that extend laterally beyond the columns. Well, if I went to the Nationals game last night and I told you I sat between home plate and first base, you wouldn't imagine that I was standing in the field between those two, right? Between first base? First base and home plate. That you're standing in the field? Yeah, you wouldn't imagine I'm standing in the field if I said I was sitting between, okay. So why is this different than that? I mean, you say it's the ordinary meaning, but there are plenty of ordinary meanings where you could conceive of something not being literally right between it. Well, between obviously is a very common preposition and can mean slightly different things depending on the context. So there's a bunch of other clues. Probably the prosecution history is the most overwhelming. Why isn't the preferred embodiment a clue? Because your construction would read the preferred embodiment, right? No, I don't think so. Because the preferred embodiment, the claims, as you can see from the prosecution, the claim is focused on the vertical motion of the vehicle. So it says there is a vertical track in figure one, 130, and that is in the space separating the two series of columns. I think OPEX's argument is, well, there's a horizontal rail that appears to be not, but the claim doesn't require that every track is between. It requires only that the track is positioned so that a delivery vehicle can move vertically between the columns, and that is shown in figure one. The vertical track legs are between. Mr. Nadek, what about in column 11 of the patented issue? It talks about the loading column 300 having vertical rails, you know, that it's a track in the preferred embodiment. The column 300, which is outside the array, is considered to have vertical rails, two sets of vertical rails, which would suggest that it's a track. How do you respond to that? So, like I said, not every track has to, the claim note says there is a track, and I think what's actually, the prosecution history is really helpful here, and also notice that the claim language says, right after the track positioning requirement, it says where in, when the vehicle is stopped along the track, it can deliver an item to a bin, something along those lines. That happens not when it's on its way up. It's when the vehicle is on its way down in figure one, and that's when it stops and delivers it to the bin, and you can see from the prosecution history, when the applicant was presented with LERTS by the patent office, he amended the claim to say, to include a requirement that the vehicle has to travel vertically. Now, LERTS was like a ramp, it had a ramp like a parking garage, right? That was not traveling vertically, clearly. No, if you look at, maybe if we could look at the, what he said in the prosecution history, is he says, in LERTS, in order for the car to go up or down in the level, it has to drive over to a ramp to go up or down a level. That's vertical. But, unlike the present invention, in the present invention, he said, LERTS doesn't allow you to go up or down a level to deliver an item to a bin, unlike the present invention, where it's between, in the space separating, the two series of columns, so that you can deliver an item to the bin above or a bin below. One thing that I've noted is that in that same prosecution history, when that claim language is added, if I remember correctly, they were referring to figure three. And if you look at the orientation of figure three, and what they refer to as the first series of columns and the second series of columns, it's in that same axis of looking down between the two sets of columns, and it's on the outside there. I think it was figure seven and figure eight, my recollection. If you look at page 527 in the appendix, I can point you to the exact... What I was referring to was page 528. 528. If you look at line five through about line eight, starting with the phrase, for instance, for instance, as shown in figures two through four, the system may include a front series of columns of destination areas 190, and a rear series of columns of destination areas 190. In such a body weight, the vehicle is to move in the space between the front and rear columns. Right, so when you said figure three, this is referring to figures two to four of the 194 bin. So maybe I am misunderstood. I thought you were talking about figure three of LERT. Could you repeat the figure three question? I was just saying, when I looked at these figures, figures two through four, it seemed to be looking at the same orientation as the Q's device, and referring to something that was outside of the array. And so, if you would help me understand that. Yeah, so let me start off at 527. As I think it's fairly clear here, I'm looking at the last paragraph, and about four lines down. He says, to go up or down between levels, he's describing LERT. To go up or down between levels, the vehicles drive up or down ramps, as shown in figure eight. The ramps are located at the outside edge of each level, as shown in figure seven. Okay, I'm going to skip a little bit down, where he says, the vehicles cannot move vertically to store or retrieve an item that is in a column above or below the level that the vehicle is on. The vehicle must drive away, this is just like the gen two system, it must drive away from the destination area, and over to a ramp, this is the vertical movement, to move up or down one or more levels, to reach the appropriate vertical location for a destination area. Now he's going to contrast that with the system, on the next page. So, he says, in contrast, and I'm going to, the system, I'm going to skip the first sentence and move on to the second. The vehicle track is located between the two series of columns, so the vehicles can move vertically between the first and second series of columns, and can transfer an item forwardly to the first series of columns, or rearwardly to the second series of columns. So, that only happens in the patent in figure one, when it's on its way down, and that's definitely in the space separating the two columns. But it's referring to figures two through four, which show a different orientation. Give me just a second. Look at figure two. Figure two, no, it's not showing, this is figure two, it's the same orientation, it's just showing a top view. And so, the front, what the patent describes as the front, is on the left of figure two. What about figure four? Figure four, this is a side view, but it's not even showing the vertical, you can't really tell much from figure four, because it's not showing where the vertical track legs are, you have to look at figure three to see that. Figure four is just showing an end view of figure three, so the vertical track legs, I colored them yellow in the brief. How is a person to know that the track that's in the loading column 300 is not a vertical track? Well, it perhaps could be considered a vertical track, but the claim requires that you have to have a track that's vertical, and that's delivering it where the vehicle stops along the track, it can deliver an item to the bid. Those are the ones that are between, and it makes sense, that's why the inventor said during prosecution, it has to be between, because it has to stop on its way down to deliver an item. Can I ask you something else? Yes. The judge here held that claim doesn't require a vertical track. If I thought that was wrong, did the judge say anything like, even if the claim does require a vertical track, this is what would read on it? You know, identify that the list nonetheless would satisfy that claim limitation, for example? I'm sorry, could you repeat that? Sure. Okay, so I think that the judge below held that the claim doesn't require a vertical track. Have you appealed that claim construction? Well, our second issue was that the track can encompass an elevator, and that's an argument that we made in the brief, that it has to be a vertical track. So it has to be a vertical track. If I agreed with that, would that change the outcome of the case, or did the administrative judge identify something that's vertical as being the vertical track? Well, if you agree with me on the track, what I call the track positioning, the between issue, then... I'm setting that aside. Setting that aside. I have a different question. My different question is that the administrative judge held that there is no requirement for a vertical track. He did hold that. That's right. I'm asking you, if I disagree with that claim construction, where does that leave us? I think that shows there's no infringement, because an elevator... I mean, the elevator... Well, actually, no, because... Yeah, but the CLJ actually found the elevator was not a vertical track, and it's actually... Where is that? It's mentioned in the reply brief. It's when he's dealing with Dependent Claim 7, which is not really an issue, but it's in the reply brief. Maybe I can do it on... I'm into the yellow. He did find that. He said the belts are not... I'll find that in the reply brief. Do you want to save your rebuttal time and keep you on track? Well, I did want to get to the drive system. Well, continue. It's your time. Okay, I'm going to continue now, because since I don't have a lot of time, I want to cut right to the critical issue for the drive system, which is the prosecution history of the related 883 patent. And there's a long string of continuations, and that was the first one that ultimately led to the 194 and the 505 patents. And in that prosecution history, there was a reference called Holland. First of all, there was a Pending Claim 34, and it had a drive system claim element cooperable with a guide system, almost identical to the drive system claim element to the one at issue here in the 505 patent. And the prior reference was Holland that was at issue. And the applicant said, Holland has a track that's horizontally, but it uses cables to lift the vehicle vertically. And he said, in contrast, my system that's claimed in the 505 patent, it requires a track in both the horizontal and vertical directions. And the chief ALJ said, there wasn't a disclaimer of a track in the vertical direction for only one reason. He said, the applicant made multiple distinguishments on different grounds. Actually, let me read this exactly. You're aware that you're using up all your time, which is you're entitled to do. Okay, let me, I'm going to, I'm going to just, I'm going to try to use up a little more time. I see I have a, so the ALJ made, said there was a combination of grounds, but that's not the law, that if you have a combination of grounds, you can't have a disclaimer standing one ground. Let me rest there, and I'll come back to it on my rebuttal, the little I have left. All right, thank you. Mr. Hager on for the commission. You're splitting your time with Mr. Shaw. Yes, sir. May it please the court, I'd like to focus on the limitation. The track is positioned between residing and claim one of the 194 patents, which is the only issue on appeal that's arguably not forfeited. As was mentioned already, the word between is a common preposition with a plain meaning when describing the location of one object in relation to two other objects, like how those sitting in the audience behind me are between this lectern and those back doors of this courtroom. I think we'd all agree that for that to be true, even if they're not sitting within an imaginary corridor that's limited to the height and width of this lectern that runs back to those doors. And the ALJ found that the specification uses the term consistently with that plain meaning. On the other hand, HC asked this court to construe between narrowly to mean only confined within the three-dimensional volume separated in two objects in order to avoid infringement. How do you respond to the dictionary definition that was relied on? It's in the space separating two objects. Well, I think that actually supports the ALJ's interpretation, Your Honor, because their dictionary definition was in the space separating two points or objects between New York and Chicago. I think we'd all agree that the states of Ohio and Pennsylvania are between the cities of Chicago and New York, even if they're not located precisely between the space separating the two footprints of those cities. Well, it's not really a question. They're not located precisely between. They're not located between, right? In the diagram, in the figure in the patent, is what we're talking about between? Yes. Is it precise? Is it not precisely between versus precisely between? I'm sorry, I don't understand. Well, you use the word precisely. I don't know what the difference is between it's precisely between and it's not precisely between. Excuse me. So I'm referring to H.C.'s proposed interpretation of between, where their position is that for something to be between within the context of the patent, it needs to be confined within the three-dimensional space set by the two objects of the preposition between. But if you look at the specification, they use it in a broader sense. First, if we look at the preferred embodiment under their interpretation, it reads out the preferred embodiment. This has already been discussed. If we look at appendix 13-647, if we could all turn to that, that shows figure one, which is the only preferred embodiment of the apparatus here. 13-647, it's an annotated version of figure one created at the evidentiary hearing based on H.C.'s experts' description of how the vehicle moves within the system, which is what all those red arrows represent. And as H.C. Well, can you go back to figure one? Because when I asked your friend about figure one, he says figure one is, you've got it, we only see one side, but we've got something on the other side. And his answer was that some of it is between and some of it isn't. Is that correct? Yes. So figure one, if you see that number 190, that's an output bin. And then there's a stack of output bins. That's one column of the destination areas. And then there's a series of eight of those. And so that's the first series of destination areas. And in the claim, language of claim one, it says between the first series of destination areas, which is what we see, and then there's a mirror version of this on the backside of the track that we don't see, that's undisputed. And that's what is the second series of columns of destination areas. And so between, they would have between mean that the track for guiding the delivered vehicles to the destination areas must be confined within that three-dimensional area set by the boundaries of those two series of destination areas, two series of columns of destination areas. But as you can see here in preferred embodiment depicted in figure one, there's several portions of the track that are outside of that space, yet still within the vertical planes set by the series of columns. And so that's the basis on which the ALJ found that the preferred embodiment was read out of claim one under their interpretation. There's further support for that, Your Honors. If you turn to Column 3, Lines 9 and 10 of the specification, that's at Appendix 304, the ALJ expressly relied on this below at Appendix 140 and 141. Lines 9 and 10 in Column 3 explain that in the preferred embodiment, the bins 190 are arranged in columns between the track legs. So now as the vehicle travels downward in preferred embodiment, the vehicle travels down on four vertical legs of the track. They're each labeled 130, which is like a figure five, because each of the four wheels of the delivery vehicle rides down one of the vertical tracks. Can I talk about vertical tracks right now? I want to ask you the same question that I asked Mr. Noonan, which is, so what was identified as being the track that's positioned between the first series of columns and the second series of columns in the accused device or system? What was found to be? Yeah. The entire track for guidance. So the entire track on which... The whole loop, the whole track? Yes. So what is the portion that allows it so that a delivery vehicle can move vertically? The portion of the accused system? Yeah. It's the lifts that are adjacent to that three-dimensional space, yet still within the vertical plane set by the columns of bins. So one thing that the Chief Administrative Law Judge held was that these claims do not require a vertical track, right? Yes. So if I were to disagree with that, then what does that require? Is that requiring a remand, or is that requiring... Or is there some alternative finding that has been made? Well, I would say two things about that. First, plain reading of Claim 1, there's no requirement for track. It just says a track for guiding the delivery vehicles at the destination areas. It says a track positioned between first series of columns and a second series of columns so that a delivery vehicle can move vertically between the first series of columns and the second series of columns. Yes. In my view, that might suggest vertical. So that's why I'm asking this question. So, I mean, you can argue why I'm wrong, but first let me know whether... Answer my direct question, if you don't mind. Yes, remand would be proper to the extent that the ALJ's constructions are changed anyway, so that the commission can determine in the first instance how these new constructions should be applied. But again, I would circle back that I believe that the description of the track is agnostic as to the orientation for the ability to move the vehicle. For example, that first basis of a track for guiding, and then it says the track is positioned so that a delivery vehicle can move vertically. So it doesn't say the portion of the track that's vertical is between so that... If the track has to be positioned so that a delivery vehicle can move vertically, how could that track not be positioned vertically? Well, for example, in the EQ system, you have horizontal portions of the track that are sitting on lifts that are like forklifts. And so they're horizontal, but they still read on this limitation because of them, the vehicle can move vertically. But to your point, though, Your Honor, if you were to... It feels a little weird because it feels like we're reading the claim language in light of the accused device, instead of understanding the claim language in light of the specification and intrinsic evidence. Okay. Well, I would say, if I could just circle back to what I was saying for Column 3, Lines 9 and 10, that specifically uses between in the same way that the ALJ interpreted it, because if... So again, Lines 9 and 10 of Column 3 state, in the present instance, the bins 190 are arranged in columns between the vertical track legs. But we see in Figure 1 and Figures 2 through 5 that the output bins are adjacent to the floor rails. They couldn't be in the middle because that's where the delivery vehicle travels. Counselor, your time has expired. Let's hear from Mr. Shaw. Thank you, Your Honor. First... I'd like to... Oh, please. Pursue the same line of questioning that we've heard. It seems very strange to me, reading the third line of that track paragraph, that a vehicle can move vertically between the first series of columns and the second series of columns. The columns are vertical. So how is... Something moving between the columns has to move horizontally. So why does the claim read vertically? I'm sorry. Because it's at the edges, the far edges, where the vertical movement appears. Isn't that correct? In the accused product, Your Honor? No, in the claim, in the invention. So in the invention, it doesn't specify that the vehicles have to move vertically or horizontally at all. They just have to be able to move in between the bins. In the preferred embodiment, the vehicles move up the loading column, horizontally across the horizontal rail 135... But it doesn't say horizontally between. It says vertically between. Yes, and then when they get to the proper column to go down to the bins, they travel down the vertical tracks. That's no longer between. That's no longer between. So I think the whole thing here is the appellants are trying to read the term between to mean that the vehicle has to be between the columns, fully enclosed within the three-dimensional space defined by the edges of the columns, from every orientation that you might be looking at it. So if you're looking at it front on, it has to be within that three-dimensional volume. But what that ignores is that if you're looking at it side on, like you were pointing out with figures three and four, Your Honor, it's not between at all. The bins stick out to... Well, it's not between in that reading of between. They stick out to the side and the track is here. The whole meaning of between is informed by the purpose of this invention, which is what the inventor talked about and what our expert talked about at trial, which is to minimize the floor space over the prior art. So the prior art were like Hot Wheels tracks that drove around on the floor and it took up all sorts of floor space. So what our inventor said is if you stand that up on its end and you put two columns of bins on either side of this track that's disposed or this guiding system that's disposed in this vertical loop, then you minimize the floor space because you only have the vehicles moving in two dimensions instead of driving around in three dimensions on the floor. That's the whole purpose of the invention and that's what they mean when they talk about the claim term between, is when you're looking end-on-end, the track in this claim is positioned between the two columns of bins. And there's no question from anyone that from that perspective, the horizontal tracks that are fixed in their system are between the columns of bins and what they're now calling the floors of the lift, which are also track segments that are disposed on those elevators from the end are also between the columns of bins. And if you look at those floors of the lift, they're made of the exact same track material as what their own product literature calls horizontal track. So I feel like this is trying to read a preferred embodiment into the claims in an effort to manufacture a non-infringement argument. What about the claim, just looking at the plain claim language where it says that the track is positioned between the first series of columns and second series of columns so that a delivery vehicle can move vertically. Why doesn't that require a vertical track? I would say first, if you look at claims two through four, they specify that a vertical track is required. They specify other things too. They also introduce a horizontal track. That's true. That's true. I think also, again, going back to first principles of what's the purpose of this invention, it's to have the system that the vehicles move on in one plane between the two columns of bins. So if you place any part of the track between the columns of bins, then the whole thing has to be between them. That's what the so that language is referring to. If I place a horizontal... You're going to between, but I'm just trying to figure out whether it's a requirement that there be a vertical track. Understood. That's what I'm trying to explain. Let me step back from that then. I think that requires going to the discussion in the specification of the synchronous and not synchronous embodiments in column 11, lines 14 through 27 of the 505 patent. What the experts all said is the not synchronous embodiment is an embodiment where the number of turns of your motor doesn't correspond to how far your vehicle has traveled because of various reasons. One of those reasons could be wheel slippage in a friction driving system. Another reason could be because your vehicle's being moved by something external like an elevator. Now the turns of your motor, your motor's not turning when your vehicle's being lifted by an the patent. That's why you have to have these external sensors disposed along the track to find where the vehicle is because it's not a deterministic relationship is the way their expert described it. You're basically saying that there's an embodiment in the specification that has a lift or elevator? Yeah, there's an embodiment in the specification that could encompass an elevator. It doesn't explicitly say that. How does that relate to the claim language that I was just talking about? Again, the claim language doesn't require that the vehicles drive vertically on the just requires that they move vertically and if they're being lifted or descended by an elevator then they're moving vertically but they're not driving vertically and there's no track required. Does that answer your question, Your Honor? I have your position. Yes, it does. So I want to talk... Let me ask you another question. If I were to disagree with that, would you agree that the case has to be vacated or re-randed for a determination of whether the accused product is a vertical track? I think it depends on how you find on the other claim terms because the track claim term doesn't affect the 505 patent claim 1 and its dependence and if you affirm the infringement finding on those claims then it doesn't change the scope of the ITC's exclusion order cease and desist order. So at that point I think we still are in the situation we're in right now where we have an exclusion order that applies and I don't know that that necessarily needs a remand. Okay, thank you. I want to address one thing that counsel... Well, two things. First, counsel was talking about the 844 file history and the distinction over Holland and one thing he said is that that claim has the same drive system cooperable with the guide system language. I think it's important to note and this is on appendix page 849 that there's a further element in that claim that requires specifically that the drive system can convey the vehicle in two directions and that to me reads like the drive system has to be able to drive the vehicle. So that to me is another thing that is potentially distinguished over Holland where its vehicle does not drive in two directions but that's totally different claim language than what we're talking about in the 505 patent where it only says that the vehicle has to have a horizontal direction of travel and a vertical direction of travel. So that goes back to what I was just talking about where a vehicle can have a vertical direction of travel if it's riding on an elevator. The other thing I want to mention just quickly about the element between that we've talked about, I think your question about the baseball game and being between home base and or home plate and first base is right on point and this is actually comes up in the outside the box case that appellants cited. The first thing the judge says is hey in normal parlance the use of the term between includes things that stick out to the side and then the judges went on and found that it was very limited in that sense and that's why they construed between to mean entirely within the three-dimensional volume. As we've talked about some today that's not the case here because that would read the preferred embodiment out of claim five and as as my co-counsel also pointed out the specification uses the term between to allow things to stick out to the side in the context of the bins versus the vertical tracks. The other thing when we talk about the alert reference, number one that argument was waived they never raised it in commission briefing you can see this in the appendix at page 13, 599 through 612. The second thing and I think this goes to some questions that that you were asking judge if you look at figure seven and figure eight of alert on appendix page 15, 446 and 447, number one the vehicles don't move vertically at all they drive horizontally up ramps. Number two the the ramps are out to the side and they're more importantly they're perpendicular to the rows of bins so the vehicle's not moving up those ramps between the rows of bins it's moving this way and the rows of bins are here. So there's any number of distinctions over alert that one could take from that discussion that OPEX made there's no clear and unmistakable disclaimer. Thank you counsel as you see your time has expired. Thank you. Thank you your honor. Mr. Nedy we'll give you three minutes for rebuttal. Thank you your honor. First I wanted to address a question judge stole that you made before having to do with vertical track. There was a claim that's not an issue in this PL claim seven which requires a track comprising of substantially vertical portion and chief judge Cheney found it wasn't infringed. His analysis because he found an elevator is not a vertical track or the belts. His analysis on appendix pages 153 to 154 it's also stated on page 18 of our reply brief. Secondly, I'd like to go back to the drive system limitation of the 505 patent and the applicant distinguished this during the prosecution of the 883 patent. It distinguishes the claim drive system from the Holland reference and the chief ALJ in his opinion on pages 114 and 115. I'd like to just read a portion of what his analysis was. He found there was no disclaimer of the use of an elevator for one reason. The applicants argued that a particular combination of several elements distinguish the claim over the prior art. Not that each of those elements in isolation was novel. Indeed the applicants offered several other amendments as possible bases for distinguishing the prior art. Then he lists three elements that relate to the method of retaining or ejecting an item. He says nothing in this passage manifests a clear and unmistakable intent to limit the scope of drive system. That's also the only reason that OPEX and the ITC argued why there's no a disclaimer. Though I think he may have raised a new argument today that's not in his briefs. It's clearly not the federal circuit's law. We cited the case Anderson, the corporate fiber composites in our brief and there's many other cases. The fact that you've cited multiple grounds of distinction doesn't immunize you from a disclaimer on any one ground. If you look at the cases that OPEX and ITC recited in their briefs to support the argument that multiple grounds of disclaimer don't make a clear multiple grounds of distinction their cases don't stand for the what they're arguing that they can immunize you just because he cited multiple grounds. Those cases are trivascular versus Samuel's and computer docking station court and we discussed in our briefs neither of those cases support that position and I'd like to look at the prosecution history for a second. If you look at page 860 this is where he's discussing Holland. You can see the drive system limitation well the drive system limitation is pretty similar to the drive system limitation that's at issue here. Almost the same and he talks about Holland just has a horizontal track but it doesn't move vertically. I see my red lights on may I just finish? You can finish your thought. If you notice on the next page he says that applicant system provides the vehicles that require track system in both directions and on the facing page he has a claim 34 here that doesn't match it's got some underlying language that doesn't match exactly the language that's pending in the claim but he shows that this track system limitation that he's talking about comes from the drive system and limitation specifically the words about configuring to configure to maintain the orientation as it changes from horizontal to vertical. Thank you to both counsel.